UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JAMES S. CALENDER and DIANE CALENDER, | : | |
| | : | |
| | : | Civil Action No. |
| Plaintiffs, | : | 10-cv-4277 (NLH) (KMW) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| NVR, INC., t/a RYAN HOMES, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**APPEARANCES**

Gary F. Piserchia, Esquire
Parker McCay P.A.
Three Greentree Centre
7001 Lincoln Drive West
P.O. Box 974
Marlton, N.J. 08053
*Attorney for Plaintiffs James S. Calender and Diane Calender*

Brian Michael Robinson, Esquire
and
Joseph Kernen, Esquire
DLA Piper L.L.P.
One Liberty Place
1650 Market Street
Suite 4900
Philadelphia, PA 19103
        and
David A. Haworth, Esquire
Ballard Spahr L.L.P.
210 Lake Drive East
Suite 200
Cherry Hill, N.J. 08002
*Attorneys for Defendant NVR, Incorporated, t/a Ryan Homes*

**HILLMAN, District Judge**

        Plaintiffs, James S. Calendar and Diane Calender (hereafter,

"Plaintiff"),[1] brought this action against Defendant, NVR, Incorporated (or, "Defendant" or "NVR"), trading as Ryan Homes, after James sustained injuries in a home he had recently purchased.  The home was designed, manufactured, constructed, and sold by NVR.  Plaintiff claims that he fell while exiting the attic through its access panel/opening.  Plaintiff alleges that the attic's access panel/opening was unreasonably dangerous and defective, and states causes of action sounding in negligence (Count One), product liability and/or strict liability (Count Two), breach of contract (Count Three), breach of warranties (Count Four), and loss of consortium (Count Five).  Presently before the Court is NVR's motion to dismiss Plaintiff's claims for failure to file an affidavit of merit insofar as those claims rely on a theory of design defect.

For the reasons expressed below, NVR's motion to dismiss Plaintiff's design defect claims under the New Jersey Affidavit of Merit Statute is granted.

## I.    JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1332. James and Diane Calender are citizens of the State of New Jersey.

---

[1] Though both James and Diane Calender are named as plaintiffs, the relevant events and the majority of claims in this case involve only James Calender.  Thus, in the interests of clarity and simplicity, and unless otherwise noted, the Court will refer to a singular "Plaintiff," while recognizing that both Calenders are plaintiffs in this matter.

NVR is incorporated and maintains its principal place of business in the Commonwealth of Virginia.  Therefore, complete diversity exists between the parties.  The amount in controversy is met because the allegations contained in Plaintiff's complaint sufficiently demonstrate that damages sought are in excess of $75,000, exclusive of interest and cost.[2]

## II.  **BACKGROUND**

According to Plaintiff's complaint, NVR is "a corporation specializing in the sale, design and construction of residential homes and is a mass-developer and/or professional builder, specializing in constructing full communities."  (Compl., ¶ 5). Plaintiff entered into an agreement with NVR to purchase a newly constructed home on March 23, 2008.  NVR designed, manufactured, built, and sold the home purchased by Plaintiff.[3]

---

[2] Plaintiff's complaint does not articulate a particular amount in controversy.  But, as Defendant correctly opines and Plaintiff ostensibly agrees, "a reasonable reading of the value of the rights being litigated" suggests that the amount in controversy may exceed $75,000.  Angus v. Shiley, Inc., 989 F.2d 142, 146 (3d Cir. 1993).  Plaintiff alleges that he suffered severe and permanent bodily injuries.  There is no reason to doubt that the amount of damages associated with such injuries, including pain and suffering, medical expenses, and loss of wages, could exceed the minimum threshold in a diversity-of-citizenship case.

[3] In its submissions to the Court, Defendant represents that, in accordance with New Jersey law, the home's architectural plans were designed, reviewed, and approved by Lawrence T. Bassett, a New Jersey licensed architect employed by NVR.  The Court does not rely on this fact for its analysis, but mentions it simply to highlight the obvious, as discussed *infra*: an architect must design building plans.

3

On or around October 21, 2008, Plaintiff accessed the home's attic in order to change the filters on air conditioning units and HVAC systems.  While exiting the attic, Plaintiff fell through its access panel/opening, and suffered severe and permanent injuries.

Plaintiff commenced this action by filing a complaint against NVR on June 30, 2010, in the Superior Court of New Jersey, Law Division, Camden County.  The complaint alleged, *inter alia*, that NVR: (1) negligently designed, manufactured, constructed, and/or sold the home; (2) is subject to product liability because the access panel/opening was unreasonably dangerous and defective, and/or due to the failure to adequately warn of such conditions; (3) breached its contract to provide a safe, suitable home; and (4) breached its express and implied warranties.  The complaint also includes a *per quod* claim for loss of consortium, and a plea for punitive damages.

NVR removed the suit to this Court on August 20, 2010.  On January 21, 2011, NVR filed the motion to dismiss Plaintiff's complaint with respect to the design defect claims.

**III.   DISCUSSION**

**A.   Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all

4

well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions[.]'" (citation omitted)).  Under the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis.  First, a claim's factual and legal elements should be separated; a "district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1950).

Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  Id. at 211 (quoting Iqbal, 129 S. Ct. at 1950).  "[A] complaint must do more

than allege the plaintiff's entitlement to relief." Id.; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." (quoting Twombly, 550 U.S. at 556)).  The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005).

### B.   The New Jersey Affidavit of Merit Statute

Defendant argues that to the extent Plaintiff's claims allege or rely on design defects, those claims must be dismissed because Plaintiff did not file an affidavit of merit.  By Defendant's estimation, an affidavit of merit is necessary for any design defect claims in this case because those claims implicate professional negligence involving a licensed professional, an architect.

Plaintiff counters that no affidavit of merit is required here because Plaintiff need not show any deviation in an architect's professional standard of care, but rather must demonstrate only that the product was defective.  Plaintiff does

6

not believe that any expert testimony is necessary to carry that burden.  Also, Plaintiff submits that no licensed person, as contemplated by the Affidavit of Merit Statute, is a defendant in this case.

### 1.   Applicability and Scope

The Third Circuit has concluded that the New Jersey Affidavit of Merit Statute ("the AMS"), N.J.S.A. § 2A:53A-26 *et seq.*, at issue in the instant case, constitutes substantive state law.  Chamberlain v. Giampapa, 210 F.3d 154, 161 (3d Cir. 2000). As such, the AMS "must be applied by federal courts sitting in diversity," as is the case here.[4]  Id.  The AMS reads in pertinent part:

> In any action for damages for personal injuries . . . resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.

N.J.S.A. § 2A:53A-27.  The AMS provides guidance by defining a

---

[4]"A [federal] court will consider the New Jersey legislature's purpose for enacting such a statute, as well as how the New Jersey courts have interpreted and applied the statute." Fink v. Ritner, 318 F. Supp. 2d 225, 228 (D.N.J. 2004).  As such, this Opinion will rely on New Jersey legislative and judicial treatment of the AMS.

"licensed person." N.J.S.A. § 2A:53A-26. This list includes architects, doctors, and engineers, among other professionally licensed occupations. <u>Id.</u>

The New Jersey courts have interpreted the main purpose of the AMS as "requir[ing] plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of litigation." <u>In re Petition of Hall</u>, 688 A.2d 81, 87 (N.J. 1997). Put differently, the thrust of the AMS is "to weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court." <u>Hubbard v. Reed</u>, 774 A.2d 495, 500 (N.J. 2001). The New Jersey courts also have understood a goal of the AMS to be that "the resources and time of the parties will not be wasted by the continuation of unnecessary litigation." <u>Knorr v. Smeal</u>, 836 A.2d 794, 798 (N.J. 2003). The New Jersey Supreme Court has cautioned, though, that the AMS should *not* serve "'to create a minefield of hyper-technicalities in order to doom innocent litigants possessing meritorious claims.'" <u>Ferreira v. Rancocas Orthopedic Assocs.</u>, 836 A.2d 779, 783 (N.J. 2003) (quoting <u>Mayfield v. Cmty. Med. Assocs.</u>, 762 A.2d 237, 244 (N.J. App. Div. 2000)).

Failure to provide an affidavit of merit in the required instances and within the prescribed time period will be deemed a

failure to state a cause of action.  N.J.S.A. § 2A:53A-29.  When
a complaint is dismissed under the AMS, it is done "with
prejudice," and "[s]uch a dismissal concludes the rights of the
parties as if the suit had been prosecuted to final adjudication
adverse to the plaintiff."  Cornblatt v. Barow, 708 A.2d 401, 413
(N.J. 1998) (citation and internal quotation marks omitted).

> **2. Substantive Analysis of New Jersey Affidavit of Merit Statute**

On its face, the statutory language does not support the
contention that the AMS is applicable to claims other than those
sounding in malpractice or negligence.  See N.J.S.A. § 2A:53A-27
("In any action for damages . . . resulting from an alleged act
of malpractice or negligence . . . ").  However, the New Jersey
Supreme Court has repeatedly asserted that, when deciding whether
an affidavit of merit is required, the courts should focus on the
nature of the legal inquiry rather than on the label placed on
the action.  See, e.g., Couri v. Gardner, 801 A.2d 1134, 1141
(N.J. 2002).  "[R]ather than focusing on whether the claim is
denominated as tort or contract, . . . courts should determine if
the claim's underlying factual allegations require proof of a
deviation from the professional standard of care applicable to
that specific profession."  Id.  "If such proof is required, an
affidavit of merit is required for that claim, unless some
exception applies."  Id.

In order to assist courts in determining whether an

9

affidavit of merit is required, the <u>Couri</u> Court articulated a three-element test.  Courts should ask:

> (1) whether the action is for "damages for personal injuries, wrongful death or property damage" (nature of injury); (2) whether the action is for "malpractice or negligence" (cause of action); and (3) whether the "care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint [ ] fell outside acceptable professional or occupational standards or treatment practices" (standard of care).

<u>Id.</u> at 1137 (quoting N.J.S.A. § 2A:53A-27).  If all three elements are satisfied, then the claim falls within the purview of the AMS, and the affidavit is required.

**C.   Application of the AMS to Plaintiff's Claims**

As all three of the <u>Couri</u> elements are satisfied with regard to Plaintiff's design defect claims, the AMS applies and an affidavit of merit is required.

> **1.   Defendant is a "licensed person" within the meaning of the AMS, satisfying the first <u>Couri</u> element.**

Plaintiff argues that, having named the construction company in his complaint rather than the individual architect employed by the company, the AMS does not apply because the company is not a "licensed person."  The AMS, however, must be interpreted more broadly than Plaintiff's restricted reading.  The substance of Plaintiff's design defect theory implicates, directly or indirectly, Defendant's architectural expertise and, in turn, its

architects and their judgment.  To allow Plaintiff "to circumvent
the affidavit requirement by naming only" an entity -- in this
matter, NVR -- as a defendant in lieu of the architect
responsible for designing the access panel/opening, would lead to
an "'entirely anomalous'" result, consequently bypassing the
affidavit requirement due to an overly technical reading of the
statute.  <u>Shamrock Lacrosse, Inc. v. Klehr, Harrison, Harvey,</u>
<u>Branzburg & Ellers, L.L.P.</u>, 3 A.3d 518, 532 (N.J. App. Div.
2010).  The AMS focuses "on the resulting harm, not on the
business forms of the named defendants."  <u>Id.</u> at 531.  "A statute
should not be read in a crabbed fashion that leads to anomalous
results."  <u>Id.</u> at 532-33.  Allowing this sort of exception would
encourage plaintiffs to file tort actions without regard for the
important statutory tort reform requirements imposed by the New
Jersey Legislature.  And, after all, an individual employee's
negligence within the scope of his employment may be imputed to
the employer under the doctrine of *respondeat superior*.  <u>See</u>
<u>Martin v. Perinni Corp.</u>, 37 F. Supp. 2d 362, 366 (D.N.J. 1999).

     Moreover, a business composed of licensed individuals may
itself be considered a "licensed person" within the meaning of
the AMS.  <u>See, e.g.</u>, <u>Shamrock Lacrosse</u>, 3 A.3d at 532 (ruling
that it would be "anomalous" to circumvent the AMS requirement by
simply naming a law firm as defendant rather than the individual
lawyer whose alleged malpractice is implicated, therefore

11

considering a law firm a "licensed person" under the AMS); Bonnieview v. Homeowners Ass'n, LLC v. Woodmont Builders, LLC, 2005 WL 2469665 (D.N.J. 2005) (holding that a company composed of licensed environmental engineers is considered a "licensed person" for purposes of affidavit of merit requirement); Martin, 37 F. Supp. 2d at 366 (holding that "a business organization whose leadership is composed of 'licensed persons' within the meaning of N.J.S.A. 2A:53A-26 is also considered a 'licensed person' for purposes" of the AMS).  Here, the conduct of a licensed professional -- the architect who designed the attic access panel/opening -- is clearly at issue.  In fact, Plaintiff names "John Does #1-10" in his complaint, and explicitly states that they "are pled to temporarily suffice for the presently undetermined identities of such persons, contractors, sub-contractors, *designers, architects*, [etc.] . . . *who participated in the design, manufacture, construction, planning,* [etc.] . . . of the house."  (Compl., ¶ 3) (emphasis added).  Plaintiff cannot avoid the vital involvement of the "licensed person" at the heart of his design defect claims in order to excuse the absence of an affidavit of merit.

For all the foregoing reasons, NVR is considered a "licensed person" within the scope of the AMS.

### 2.    Plaintiff is seeking damages for personal injuries, satisfying the second Couri element.

As indicated by the plain language of the statute, N.J.S.A.

§ 2A:53A-27 ("In any action for damages for personal injuries . . . "), and reinforced via the second <u>Couri</u> element, the action must be one seeking damages for personal injuries in order for the AMS to apply.  In the present case, Plaintiff clearly seeks damages for personal injuries.  As such, the second <u>Couri</u> element is satisfied.

> **3.    Because proving a design defect claim requires expert testimony regarding a professional standard of care and conduct, the third <u>Couri</u> element is satisfied.**

The third <u>Couri</u> element makes the Court ask "whether the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint fell outside acceptable professional or occupational standards or treatment practices."  <u>Couri</u>, 801 A.2d at 1137 (citation, internal quotation marks, and brackets omitted).  Following the mandates of <u>Couri</u>, in order to assess this it is crucial to examine the nature of the claim at issue -- the design defect.

In essence, one theory of Plaintiff's claims is that the attic access panel/opening was designed or planned defectively.  In New Jersey, *only* registered architects or licensed engineers are permitted to design a home's plans and specifications.[5]  In

---

[5] Under the New Jersey Building Code, N.J.A.C. § 5:23-2.21,

> (b) Professional architecture or engineering services:
>
> 1.   Design: All new, renovation, alteration,

claiming that NVR's building plans were designed defectively, Plaintiff presupposes that the "care, skill or knowledge exercised or exhibited . . . in the . . . work" of the licensed architect "fell outside acceptable professional or occupational standards." <u>Id.</u>  In essence, the design defect aspect of Plaintiff's claim is one of professional malpractice or negligence in the field of architecture.  Clearly, such claims were meant to be protected by the AMS as demonstrated by not only the plain language of the AMS but also the case law interpreting it.

In order to prove the existence of a duty and that NVR -- and, more specifically, its architect -- breached its professional standard of care in designing the attic access panel/opening, Plaintiff would have to rely on the expert

_____

reconstruction, expansion, addition or modification work involving the practice of professional architecture or engineering, as defined by the statutory requirements of the professional registration and licensing laws of this State, shall be prepared by registered architects or licensed engineers.  All plans, computations and specifications required for a construction permit application must be prepared by or under the direct supervision of a registered architect or licensed engineer and bear his or her signature and seal in accordance with the State's statutes and regulations governing the professional registration and licensing of architects and engineers.

N.J.A.C. § 5:23-2.21(b)(1).

testimony of another licensed architect, a registered engineer, or an expert of comparable skill or knowledge. Assessing the existence or alleged breach of a duty of care regarding an architectural design defect clearly "concern[s] a subject matter that is beyond the ken of the average juror." Hisenaj v. Kuehner, 942 A.2d 769, 774 (N.J. 2008). It is true that the "doctrine of common knowledge permits exception to the general rule," Estate of Chin v. St. Barnabas Med. Ctr., 734 A.2d 778, 785 (N.J. 1999), allowing a jury, through common knowledge and experience, "to conclude without expert testimony that a standard of care applied and was breached," Lucia v. Monmouth Med. Ctr., 775 A.2d 97, 103 (N.J. App. Div. 2001). However, the common knowledge doctrine is only applicable "where the carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience." Rosenberg v. Cahill, 492 A.2d 371, 375 (N.J. 1985). The architectural design defects in this case are of a complex nature, involving instrumentalities the details and nuances of which are not readily apparent, and thus cannot be said to fall within this exception. See Rocco v. N.J. Transit Rail Operations, Inc., 749 A.2d 868, 879 (N.J. App. Div. 2000) (noting that when a case "involves a complex instrumentality, expert testimony is needed in order to help the fact-finder understand 'the mechanical intricacies of the instrumentality' and help to exclude other possible causes of the

accident" (quoting <u>Jimenez v. GNOC Corp.</u>, 670 A.2d 24, 30 (N.J. App. Div. 1996))).[6]

This conclusion is further borne out by an examination of the proof necessary for a negligence-based products liability claim and a strict liability claim under New Jersey law.[7]  The

---

[6] A brief survey of product liability cases leads to the conclusion that, for purposes of a design defect claim, an attic access panel/opening constitutes a complex instrumentality in need of expert testimony. <u>See, e.g.</u>, <u>Scanlon v. General Motors Corp., Chevrolet Motor Div.</u>, 326 A.2d 673, 677 (N.J. 1974) (finding that an automobile is a complex instrumentality requiring expert testimony); <u>Wojcik v. Borough of Manville</u>, 2010 WL 322893 (N.J. App. Div. 2010) (motorcycle helmet as complex instrumentality); <u>Tluczek v. Prestige BMW of Ramsey</u>, 2009 WL 2601625 (N.J. App. Div. 2009) (steering column); <u>Huszar v. Greate Bay Hotel & Casino, Inc.</u>, 868 A.2d 364 (N.J. App. Div. 2005) (elevator door); <u>Lauder v. Teaneck Volunteer Ambulance Corps</u>, 845 A.2d 1271 (N.J. App. Div. 2004) (hospital gurney); <u>Gore v. Otis Elevator Co.</u>, 762 A.2d 292 (N.J. App. Div. 2000) (elevator); <u>Rocco</u>, 749 A.2d 868 (lock/unlock mechanism on a train door);; <u>Hunt v. Kmart</u>, 2006 WL 799189 (N.J. App. Div. 2006) (lawn chair); <u>but see, e.g.</u>, <u>Henning v. Casa DiBertacci, Inc.</u>, 2007 WL 1461170 (N.J. App. Div. 2007) (finding that a cardboard box is *not* a complex instrumentality requiring expert testimony, falling instead within the common knowledge exception); <u>Mathews v. University Loft Co.</u>, 903 A.2d 1120 (N.J. App. Div. 2006) (finding that the danger of falling off a bunk bed is open and obvious, not requiring expert testimony); <u>Warrington v. Paint Creek Supply, Inc.</u>, 2008 WL 51459 (N.J. App. Div. 2008) (finding that a latch is *not* a complex instrumentality).

[7] The New Jersey Products Liability Act, codified at N.J.S.A. § 2A:58C-1 *et seq.* provides in pertinent part:

A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the

elements of proof under a strict liability theory are that "(1) the product design was defective; (2) the defect existed when the product was distributed by and under the control of defendant; and (3) the defect caused injury to a reasonably foreseeable user." Michalko v. Cooke Color & Chem. Corp., 451 A.2d 179, 183 (N.J. 1982).  In order to prove the first prong -- that the product design was defective -- it is necessary to employ a risk-utility analysis.  Cepeda v. Cumberland Engineering Co., Inc., 386 A.2d 816, 826 (N.J. 1978), rev'd. on other grounds, Suter v. San Angelo Foundry & Mach. Co., 406 A.2d 140 (N.J. 1979).

Factors to be considered in the risk-utility analysis include:

> (1)  The usefulness and desirability of the product, its utility to the user and to the public as a whole.
>
> (2)  The safety aspects of the product, the likelihood that it will cause injury, and the probable seriousness of the injury.

---

> manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

N.J.S.A. § 2A:58C-2.  Plaintiff seems to suggest that, because this claim was brought pursuant to and falls under the Products Liability Act, it is somehow precluded from the strictures of the AMS.  However, the only case that Plaintiff cites in support of this contention, Darwin v. Gooberman, 772 A.2d 399 (N.J. App. Div. 2001), was specifically overturned by the New Jersey Supreme Court on the basis of that contention.  See Couri, 801 A.2d at 1141 (holding that it is not the label attached to the claim, but the substance of that claim which should inform the application of the AMS).

17

(3) The availability of a substitute product which would meet the same need and not be as unsafe.

(4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.

(5) The user's ability to avoid danger by the exercise of care in the use of the product.

(6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.

(7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

Id. at 826-27 (citing John Wade, "On The Nature of Strict Tort Liability For Products," 44 Miss. L.J. 825, 837-838 (1973)). Under a negligence-based product liability theory, the plaintiff not only examines the care or skill of the designer, but also "'must prove under a risk-utility analysis the existence of an alternate design that is both practical and feasible,' and 'safer' than that used by the manufacturer." Diluzio-Gulino v. Daimler Chrysler Corp., 897 A.2d 438, 441 (N.J. App. Div. 2006) (quoting Lewis v. Am. Cyanamid Co., 715 A.2d 967, 980 (N.J. 1998)).

Proceeding under either rubric, it is clear that in the instant case, Plaintiff is necessarily challenging the

18

architectural designs and plans -- which only the licensed architect was able to craft.  In order to do so, he would need the expert testimony of another licensed architect or a comparable expert.  For example, under the strict liability design defect rubric, Plaintiff would first need to prove that the product design was defective.  See Michalko, 451 A.2d at 183. This necessarily entails an analysis of the design plans, an assessment that could only be performed by an expert capable of opining on the professional standard of care.  Similarly, under either design defect theory, it would be necessary to propose a safer, alternative design.  This, too, would necessarily entail expert testimony.  The testimony would have to compare the safer alternate design with the allegedly unsafe earlier design, thereby demanding an examination of the original architect's work product and, as such, the care or skill with which he designed the access panel/opening.  Without such referential testimony, it would be difficult to satisfy the "safer alternate design" requirement.  And, of course, the negligence-based theory of product liability, by its definition and nature, must delve into the professional standard of care and determine whether any deviation from that standard has occurred.

It therefore is clear that proof of a design defect in this case would require expert testimony of a licensed architect, engineer, or other expert that addresses the "care, skill or

19

knowledge exercised or exhibited" in the design.  <u>Couri</u>, 801 A.2d
at 1137 (citation and internal quotation marks omitted).  In
order to succeed, the expert testimony would have to assert that
the prior architectural design work "fell outside acceptable
professional or occupational standards or treatment practices."
<u>Id.</u> (citation and internal quotation marks omitted).  For all the
foregoing reasons, the third <u>Couri</u> element is satisfied.

> **4.   The AMS applies to Plaintiff's design defect
> theory, and as such, an affidavit of merit was
> required.**

All three <u>Couri</u> elements are satisfied.  First, the
defendant is considered a "licensed person."  Second, the claim
seeks damages for personal injury.  Third, the nature of the
claim necessarily involves a contention about the professional
standard of care for a protected, licensed class -- architect.
As all three elements are satisfied, the AMS applies to the
Plaintiff's design defect claim.  An affidavit of merit was
therefore required to proceed under that theory of liability.  It
is undisputed, however, that Plaintiff did not file an affidavit
of merit.

As stated above, failure to file an affidavit of merit in
the required instances will result in dismissal with prejudice of
the claim.  <u>Cornblatt</u>, 708 A.2d at 413.  Defendant notes, and
Plaintiff seems to disregard, that Defendant's motion to dismiss
is only to the extent that the counts are based on design defect

allegations.  In fact, Defendant concedes that the AMS does not apply to certain of Plaintiff's other causes of action, repeatedly acknowledging, expressly and impliedly, the limited scope of the motion to dismiss and the application of the AMS to this case.

Therefore, to the extent that Plaintiff's theories of liability are based on design defect, they are dismissed.  The practical effect of this ruling is that Plaintiff is precluded from trying to establish the existence of, or rely on a theory of, design defect.  Absent an affidavit of merit, Plaintiff cannot proceed in any way on such a claim.

However, Plaintiff's claims that are separate and apart from design defect -- manufacturing defect, failure to warn, breach of express warranty,[8] and breach of contract -- are still viable at

---

[8] To the extent that the underlying claim is based on a defective product (rather than negligence in construction or installation), and hence governed by the Products Liability Act, breach of implied warranty and negligence are not viable claims. "[T]he PLA 'no longer recognizes negligence or breach of warranty (with the exception of an express warranty) as a viable separate claim for 'harm[,]' [including personal injury,] caused by a defective product' or an inadequate warning." Koruba v. Am. Honda Motor Co., 935 A.2d 787, 795 (N.J. App. Div. 2007) (quoting Tirrell v. Navistar Int'l, Inc., 591 A.2d 643, 647 (N.J. App. Div. 1991)).  "Rather, the exclusive method to prosecute such a claim is . . . by proving that the product was not reasonably fit, suitable or safe for its intended purpose because it either contained a manufacturing defect, failed to contain adequate warnings or instructions, or was designed in a defective manner." Id.  It is therefore not possible to assert breach of implied warranty or negligence as separate claims to the extent that they are based on the product itself.

this time.  The Court does not read Defendant's motion as challenging any of those other claims.  Moreover, it may be possible to establish those claims absent any allegation of design defect.  See, e.g., Myrlak v. Port Auth. of N.Y. & N.J., 723 A.2d 45, 52 (N.J. 1999) (allowing a plaintiff to prove a manufacturing defect using direct evidence, including expert testimony, or circumstantial evidence).  Therefore, Defendant's motion is granted, and Plaintiff is precluded from pursing his causes of action under a theory of design defect.

**IV.   CONCLUSION**

For all the foregoing reasons, Plaintiff's design defect claims fall under the purview of the New Jersey Affidavit of Merit Statute, N.J.S.A. § 2A:53A-26 *et seq*.  Due to Plaintiff's failure to file an affidavit of merit to support this portion of his complaint, Defendant's motion to dismiss is granted.  Plaintiff may proceed with his action only to the extent that it in no way relies on or attempts to establish the existence of a design defect.

Date: September 30, 2011                  /s/ NOEL L. HILLMAN
At Camden, New Jersey            Hon. Noel L. Hillman, U.S.D.J.