```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| JAMES S. CALENDER and DIANE CALENDER,<br><br>           Plaintiffs,<br><br>      v.<br><br>NVR, INC., t/a RYAN HOMES, et al.,<br><br>           Defendants. | Civil No. 10-4277 (NLH/KMW)<br><br>**OPINION** |

**APPEARANCES:**

Gary F. Piserchia, Esquire
Parker McCay P.A.
9000 Midlantic Drive, Suite 300
P.O. Box 5054
Mount Laurel, New Jersey 08054
     *Attorney for Plaintiffs James S. Calender and Diane Calender*


Brian Michael Robinson, Esquire
Joseph Kernen, Esquire
DLA Piper L.L.P.
One Liberty Place
1650 Market Street
Suite 4900
Philadelphia, Pennsylvania 19103

David A. Haworth, Esquire
Ballard Spahr L.L.P.
210 Lake Drive East
Suite 200
Cherry Hill, New Jersey 08002
     *Attorneys for Defendant NVR, Incorporated, t/a Ryan Homes*


**HILLMAN, District Judge**

     This matter comes before the Court by way of motion [Doc.

No. 48] of Defendant NVR, Incorporated, trading as Ryan Homes, (hereinafter, "Defendant" or "NVR"), seeking summary judgment pursuant to Federal Rule of Civil Procedure 56.  The Court has considered the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, Defendant's motion will be granted.

## I.   **JURISDICTION**

The Court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and an amount in controversy in excess of $75,000.  Plaintiffs James and Diane Calender are citizens of the State of New Jersey.  Defendant NVR is incorporated and maintains its principal place of business in the Commonwealth of Virginia.  Therefore, complete diversity exists between the parties.  The amount in controversy is met because the allegations contained in Plaintiffs' complaint sufficiently demonstrate that the damages sought are in excess of $75,000, exclusive of interest and cost.[1]

---

1. As the Court previously recognized in its September 30, 2011 Opinion, Plaintiffs' complaint does not articulate a particular amount in controversy. Defendant, however, correctly asserted, and Plaintiff apparently agreed, that "a reasonable reading of the value of the rights being litigated" suggests that the amount in controversy may exceed $75,000. See Angus v. Shiley, Inc., 989 F.2d 142, 146 (3d Cir. 1993). Plaintiffs' complaint alleges that he suffered severe and permanent bodily injuries, and the Court previously found that there was no reason to doubt that the

Case 1:10-cv-04277-NLH-KMW   Document 54   Filed 09/26/12   Page 3 of 20 PageID: 851

## II. BACKGROUND

As the Court set forth in its September 30, 2011 Opinion, James S. Calendar and Diane Calender brought this action against Defendant for injuries James Calendar sustained from a fall which allegedly occurred while he was exiting the attic of a home he had recently purchased. The home was designed, manufactured, constructed, and sold by NVR. In the complaint, Plaintiffs alleged that the attic's access panel/opening was unreasonably dangerous and defective, and asserted causes of action sounding in negligence (Count One), product liability and/or strict liability (Count Two), breach of contract (Count Three), breach of warranties (Count Four), and loss of consortium (Count Five).

By Opinion and Order dated September 30, 2011, the Court previously precluded Plaintiffs from pursuing a products liability cause of action under a theory of defective design with respect to the attic's access panel/opening based on Plaintiffs' failure to file an affidavit of merit in support of that theory of liability. (Op. [Doc. No. 42] 22, Sept. 30, 2011.) At this time, the parties agree that other than the derivative loss of consortium claim by Diane Calendar,[2] only three causes of action

---

amount of damages associated with such injuries, including pain and suffering, medical expenses, and loss of wages, could exceed the minimum threshold in a diversity case.

2. To the extent Plaintiffs' complaint asserts a claim for loss of consortium on behalf of Diane Calendar, Plaintiff James Calendar's wife, the Court notes that this claim is derivative of

remain at issue in this litigation: (1) a failure to warn claim under the New Jersey Products Liability Act (the "PLA" or "the Act"); (2) a claim for breach of implied warranty; and (3) a claim for negligence.  (See Def.'s Statement of Undisputed Material Facts in Supp. of Mot. for Summ. J. [Doc. No. 48-1] ¶ 49); (see also Pl.'s Reply to Def.'s Statement of Facts [Doc. No. 52] ¶ 49) (admitting paragraph forty-nine of Defendant's Statement of Facts regarding the remaining claims at issue in this litigation).

### III. DISCUSSION

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving

---

James Calendar's personal injury claim, and "the viability of [that claim] is subject to the survival of [her husband]'s claim."  Ryan v. Renny, 999 A.2d 427, 442 n.1 (N.J. 2010) (citing Sciarrotta v. Global Spectrum, 944 A.2d 630, 633 n.3 (2008); Kibble v. Weeks Dredging & Constr. Co., 735 A.2d 1142, 1149 (1999)).

party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." (citation omitted); see also Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence

5

to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof.") (citing Celotex, 477 U.S. at 325).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**IV. ANALYSIS**

In the present motion, Defendant seeks the entry of summary judgment in its favor with respect to all of Plaintiffs' remaining claims which include: (1) a failure to warn claim under the PLA; (2) a breach of implied warranty claim; (3) a negligence claim; and (4) a derivative claim for loss of consortium.

**A.   Subsumption of Claims Under the PLA**

With respect to Plaintiffs' claims for negligence and breach of implied warranty, Defendant argues it is entitled to the entry

6

of summary judgment because these claims are subsumed under the PLA because the Act constitutes the exclusive remedy for personal injury claims arising out of the use of a product under New Jersey law.[3]  (Br. in Supp. of Mot. for Summ. J. by Def. NVR, Inc. [Doc. No. 48-2] (hereinafter, "Def.'s Br."), 29.)

The PLA was enacted by the New Jersey Legislature in 1987 "based on an 'urgent need for remedial legislation to establish clear rules with respect to certain matters relating to actions for damages for harm caused by products.'"  Sinclair v. Merck & Co., Inc., 948 A.2d 587, 593 (N.J. 2008) (citing N.J. Stat. Ann. § 2A:58C-1(a)).  As the New Jersey Supreme Court has explained, by enacting the PLA "'[t]he Legislature intended ... to limit the liability of manufacturers so as to "balance[ ] the interests of the public and the individual with a view towards economic reality."'"  Sinclair, 948 A.2d at 593 (citing Zaza v. Marquess & Nell, Inc., 675 A.2d 620, 627 (N.J. 1996)).  Thus, under New Jersey law, the PLA governs any "product liability action."

A product liability action is statutorily defined as "any

---

3. In making this argument, Defendants cite to the Court's September 30, 2011 Opinion which previously concluded that "[t]o the extent that the underlying claim is based on a defective product (rather than negligence in construction or installation), and hence governed by the Products Liability Act, breach of implied warranty and negligence are not viable claims."  (Op. [Doc. No. 42] 21 n.8, Sept. 30, 2011) (citing Koruba v. Am. Honda Motor Co., 935 A.2d 787, 795 (N.J. Super. Ct. App. Div. 2007); see also Calender v. NVR, Inc., No. 10-4277, 2011 WL 4593759, at *8 n.8 (D.N.J. Sept. 30, 2011).

7

claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J. Stat. Ann. § 2A:58C-1(b)(3). The PLA further defines the type of "harm" caused by a product to include the following: "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph." N.J. Stat. Ann. § 2A:58C-1(b)(2).

In In Re Lead Paint Litigation,[4] the New Jersey Supreme Court set forth substantive guidance regarding the scope of the PLA and explicitly recognized that "'[w]ith the passage of the Product Liability Act, ... there came to be one unified, statutorily defined theory of recovery for harm caused by a product[.]'" 924 A.2d 484, 503 (N.J. 2007) (citation omitted).

---

4. In Lead Paint, the New Jersey Supreme Court examined whether the plaintiffs, twenty-six municipalities and counties, stated a cognizable claim based on the common law tort of public nuisance in seeking to recover the costs of detecting and removing lead paint from homes and buildings and of providing medical care to residents affected with lead poisoning. 924 A.2d 484, 486-87 (N.J. 2007). In concluding that plaintiffs' allegations could not be understood to state a public nuisance claim under either "traditional [or] modern concepts of the tort[,]" the Supreme Court expressly noted the "inescapable fact that carefully read, the claims asserted would instead be cognizable only as products liability claims." Id. at 503.

The New Jersey Supreme Court also observed that "[t]he language chosen by the Legislature in enacting the PLA [was] both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products."  Id. (citing N.J. STAT. ANN. § 2A:58C-1(b)(3) defining a "product liability action").

As this Court has previously explained, the "PLA does not recognize either negligence or implied breach of warranty as separate claims for harm caused by a defective product; those claims have been 'subsumed within the new statutory cause of action.'"  West v. Am. Honda Motor Co., No. 08-0700, 2008 WL 4104683, at *3 (D.N.J. Aug. 28, 2008) (citing Tirrel v. Navistar Intern., Inc., 591 A.2d 643, 647 (N.J. Super. Ct. App. Div. 2007)).  Under New Jersey law, "the PLA 'no longer recognizes negligence or breach of warranty (with the exception of an express warranty) as a viable separate claim for "harm[,]" [including personal injury,] caused by a defective product' or an inadequate warning."  Koruba v. Am. Honda Motor Co., 935 A.2d 787, 795 (N.J. Super. Ct. App. Div. 2007) (citing Tirrell, 591 A.2d at 647).  "Rather, the exclusive method to prosecute such a claim is under N.J.S.A. 2A:58C-2 [the PLA] by proving that the product was not reasonably fit, suitable or safe for its intended purpose because it either contained a manufacturing defect, failed to contain adequate warnings or instructions, or was

9

designed in a defective manner." Koruba, 935 A.2d at 795.

Here, Plaintiffs allege that Defendant failed to warn Plaintiffs regarding the dangers of entering or exiting the attic through the access panel/opening, and that as a result James Calendar was injured. These claims by Plaintiffs clearly constitute "personal injury claims arising from product use" which fall within the scope of the PLA. Moreover, Plaintiffs concede that they are proceeding under the PLA. (See generally Pls.' Compl. 3-9.) Having brought this action pursuant to the Act, the Court agrees with Defendant that Plaintiffs cannot simultaneously proceed with their common law claims for negligence and implied breach of warranty because these claims are subsumed by the PLA. See, e.g., Kaur v. Standex Intern. Corp., No. 06-2425, 2009 WL 2016073, at *2 n.4 (D.N.J. July 7, 2009) (recognizing that plaintiffs' "various common law personal injury claims ... have been subsumed under the Products Liability Act ("PLA") in New Jersey."); Durand ex rel. Durand v. Kolcraft, No. 05-4348, 2007 WL 4440165, at *3 n.4 (D.N.J. Dec. 14, 2007) (explaining that to the extent plaintiff's complaint couched any of its product liability allegations as claim for negligence, "the PLA eliminate[d] the legal basis for this negligence claim" because the Act "provides the exclusive remedy for all personal injury claims arising out of the use of a product"). Accordingly, Defendant has met its burden and is entitled to the

entry of summary judgment on Plaintiffs' claims for negligence and implied breach of warranty.[5]

### B. Failure to Warn Claim under the PLA

With respect to Plaintiffs' failure to warn claim asserted under the PLA, Defendant argues that summary judgment should be entered in its favor because NVR did not have a duty to warn or instruct Plaintiffs regarding the dangers of entering or exiting the attic on a ladder or when or how to use a ladder in Plaintiffs' home because the "danger of falling while entering and exiting an attic is 'open and obvious' and requires no accompanying warnings or instructions as a matter of law under the PLA." (Br. in Supp. of Mot. for Summ. J. by Def. NVR, Inc.

---

5. In their opposition brief, Plaintiffs failed to offer any arguments addressing the issue of whether their claims for negligence and implied breach of warranty are subsumed by the PLA, nor did Plaintiffs offer any evidence in support of the continuing viability of these claims despite simultaneously proceeding with their PLA claim. Defendant has met its burden in moving for summary judgment on these claims, and the Court finds that Plaintiffs have not demonstrated that there is a genuine issue of fact for trial with respect to claims for negligence or breach of implied warranty. Moreover, the Court notes the "'well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal.'" Dempsey v. Del. Dep't of Public Safety, 359 F. App'x 347, 349 (3d Cir. 2009) (citing Liberles v. Cook Cnty., 709 F.2d 1122, 1126 (7th Cir. 1983)).

[Doc. No. 48-2] (hereinafter, "Def.'s Br."), 13.) Additionally, NVR asserts that as a matter of fundamental fairness and public policy, "a home builder has no duty to instruct a home owner on when and how to safely use other products, such as ladders, when performing routine maintenance of his home."[6]  (Def.'s Br. 14.)

In New Jersey, the PLA allows a plaintiff to prove that a product was defective (i.e., not reasonably fit, suitable or safe for its intended purpose) by demonstrating that (1) the product at issue deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same ... specifications or formulae; (2) the product failed to contain adequate warnings or instructions; or (3) the product was designed in a defective manner.  See Mathews v. Univ. Loft Co., 903 A.2d 1120, 1124-25 (N.J. Super. Ct. 2006) (citing N.J. STAT. ANN. 2A:58C-2).  "In a failure to warn case, the alleged defect is not in the design or the manufacturing of the product[, but rather,] 'the defect is in the failure to warn unsuspecting users that the product can potentially cause injury.'"  Durkin v. Paccar, Inc., No. 10-2013, 2010 WL 4117110, at *9 (D.N.J. Oct. 19, 2010) (citing Zaza, 675 A.2d at 632).

While a manufacturer can avoid liability on a failure to

---

6. In light of the Court's disposition of Plaintiffs' PLA claim as set forth infra, the Court need not address the merits of this argument by Defendant.

12

warn claim if the product contains an adequate warning or instruction, Mathews, 903 A.2d at 1125, the adequacy of a warning need only be addressed if it is first established that the manufacturer in fact had a duty to warn.  Id.  In New Jersey, "[n]o duty to warn exists where a product presents no danger, ... or when the danger is obvious."  Perkel v. Apex Furniture Mfg. Co. Ltd., 2011 WL 2447938, at *3 (N.J. Super. Ct. App. Div. June 21, 2011) (citing Mathews, 903 A.2d at 1125, certif. denied, 911 A.2d 69 (2006)).  Specifically, section 2A:58C-3a(2) of the PLA addresses the duty to warn and provides that a "manufacturer or seller shall not be liable if ... [t]he characteristics of the product are known to the ordinary consumer or user, and the harm was caused by an unsafe aspect of the product that is an inherent characteristic of the product and that would be recognized by the ordinary person who uses or consumes the product with the ordinary knowledge common to the class of persons for whom the product is intended[.]"  Mathews, 903 A.2d at 1127 n.8 (citing N.J. STAT. ANN. 2A:58C-3a(2)).

After a thorough review of this statutory defense and related New Jersey case law, the Appellate Division of the New Jersey Superior Court held in Mathews "that the obviousness of the danger is an absolute defense to [a] plaintiff's failure to warn action" under Section 2A:58C-3a(2).  Id. at 1128-29. However, "'[w]hen reasonable minds may differ as to whether the

risk was obvious or generally known, the issue is to be decided by the trier of fact.'"  Mathews, 903 A.2d at 1127 (citing RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 cmt. j (1998)).

Here, Defendant represents that the attic entrance at issue, similar to that utilized in thousands of homes, consists of a hole in the ceiling which is covered by an access panel. (Def.'s Br. 16-17.)  Defendant further asserts that there are no harmful moving parts and no latent dangers with respect to the access panel/opening to the attic.  (Id. at 17.)  Thus, Defendant argues that "the danger that one might fall while attempting to enter or exit the attic through that opening in the ceiling" is "open and obvious" and analogizes the facts of this case to those set forth in Mathews to support this argument.  (Id. at 15-16.)

In Mathews, the plaintiff was a college senior who lived in an on-campus apartment where he slept in a "loft bed" which was six feet off the floor and essentially constituted a bunk bed, but rather than a top bed and a bottom bed, the loft bed had a top bed and an empty space below for the student to place other dorm furniture such as a desk or a dresser.  903 A.2d at 1122 n.3.  The plaintiff had never slept in a loft bed or bunk bed before.  Id. at 1122.  One particular morning, after having slept in the loft bed over the course of several weeks, the plaintiff was startled awake by yells from his roommate to turn off a pager that was making noise on the desk or dresser located below the

plaintiff's loft bed.  Id.  According to the plaintiff in Mathews, after being awakened by his roommate's yells, the next thing the plaintiff knew, he had fallen from the bed and was on the floor.  Id.  The plaintiff suffered injuries to his shoulder and a jury later found in his favor on a failure to warn claim brought pursuant to the PLA.  Id. at 1122-23.  In proceeding on his failure to warn claim, the plaintiff demonstrated that there were no warning labels on the bed, and later testified that "it had never 'cross[ed his] mind' or 'occurred to' [him] that he could fall or that the bed was dangerous in any way."  Id. at 1123.  The plaintiff in Mathews further "testified that had he seen a warning, he would have been 'aware of the hazard that was present' and slept closer to the wall, as he had done after the accident."  Id.

On appeal, the Appellate Division reversed the jury verdict in plaintiff's favor.  Id. at 1122.  Specifically, the court held that "the [trial] judge should have granted summary judgment" in favor of the defendant because the "[d]efendant had no duty to warn against the danger of falling from the loft bed because the danger was 'open and obvious.'"  Id. at 1124.  Significantly, the Appellate Division explained that "warnings would lose their efficacy and meaning if they were placed on every instrument known to be dangerous, such as a knife, scissor, glass, bat, ball, bicycle, or other product that poses a generally-known risk

15

of injury if misused, dropped, *or fallen from*."  Id. at 1129 (citing RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 cmt. j (1998)) (emphasis added).  The court further concluded that "[t]he risks [of falling from the loft bed] are so obvious here that we fail to see ... *what a warning could have advised in addition to the obvious*."  Mathews, 903 A.2d at 1129 (emphasis added).

In this case, the Court agrees with Defendant NVR that just as in Mathews, no duty to warn existed here because the dangers of falling while attempting to enter or exit the attic through the access panel/opening in the ceiling of Plaintiffs' home were open and obvious.  The Court fails to see how Defendant NVR could have provided a warning regarding the potential danger of falling from an access panel/opening in the ceiling that advised of anything in addition to the obvious without otherwise diminishing the "efficacy and meaning" of the warning itself by virtue of its placement on a "product that poses a generally-known risk of injury if ... *fallen from*."  See Mathews, 903 A.2d at 1129 (emphasis added).  It is generally well known that the attic of a home is located just below the roof,[7] and that to access that space, a homeowner must necessarily ascend some measure of vertical height.  Under the circumstances of this case, where the

---

7.  The term attic is defined as "a room or a space immediately below the roof of a building[.]"  MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 80 (11th ed. 2003).

means of access is through a clearly visible panel opening in the ceiling of the home, it cannot fairly be said that a duty exists to warn the homeowner that accessing the attic through this ceiling panel is potentially dangerous. This is particularly true where the ceiling access panel can readily be observed at a height that ordinary people understand poses a risk of falling and causing injury.

In this case, the Court finds as a matter of law that reasonable minds could not differ in concluding that the risk of falling while utilizing the ceiling panel to access the attic was open and obvious — no matter what means the homeowner might have employed in doing so (i.e., the use of a ladder, a step stool, pull-down attic stairs, a chair, etc.). Much like the risk of falling from a six foot loft bed was held to be open and obvious under New Jersey law in Mathews, the Court finds that any alleged harm in this case arising from Plaintiff's use of the access panel/opening was the result of an unsafe aspect of the access panel/opening itself, (i.e., its height), which is an inherent characteristic that would be recognized by the ordinary person with the ordinary knowledge common to those who use this type of access panel/opening. A reasonable person observing an attic access panel in the ceiling would recognize, almost immediately, that attempting to reach a panel located at a height above one's head (or attempting to come down from it), could result in a fall

17

from that height.  Cf. Mathews, 903 A.2d 1128-29.  Moreover, considering "that the obviousness of the danger is an absolute defense to [a] plaintiff's failure to warn action" under Section 2A:58C-3a(2), see id., the Court finds that there is no genuine issue of material fact for trial with respect to Plaintiffs' failure to warn claim under the PLA, and Defendant is entitled to summary judgment in its favor.[8]

Although Plaintiffs oppose the entry of summary judgment for Defendant on the failure to warn claim under the PLA, Plaintiffs concede the basic premise underlying Defendant's argument – that a manufacturer does not have a duty to warn of dangers or risks that are obvious.  (Pls.' Br. 5); (see also Pl.'s Br. 6-7) (noting that "... Defendant might be correct in that there is no duty to warn of dangers that are open and obvious...").  However, in an attempt to avoid the entry of summary judgment for Defendant based on the open and obvious defense, Plaintiffs assert that their "failure to warn claim is predicated on Defendant's failure to instruct or warn purchasers as to what should or should not be done to safely access the home's attic." (Id. at 6.)  More specifically, Plaintiffs claim that Defendant

---

8. Defendant argues in the alternative that if the Court holds that a duty to warn existed in these circumstances, Plaintiffs' failure to warn claim should be dismissed because Plaintiffs failed to file an affidavit of merit.  Because the Court finds that no duty to warn existed here in light of the open and obvious nature of the danger, the Court need not address Defendant's alternative argument.

failed to warn "users not to utilize A Frame, step ladders to access the attic" and thereby put Plaintiff James Calendar at risk of serious and significant injury. (Id.) Thus, according to Plaintiffs it cannot be determined as a matter of law "that the risks inherent in the use of an A-Frame, step ladder to access the attic ... are open and obvious." (Id. at 7.)

Plaintiffs' argument in this regard misunderstands the basic nature of the issue presently before the Court. As Plaintiffs readily acknowledge, "[t]o succeed on a failure to warn claim, a plaintiff must show that a 'manufacturer did not warn the consumer of the risks attendant to the product[.]'" (Pls. Br. 4) (citation omitted). As set forth throughout Plaintiffs' complaint, the product at issue in this case is the attic access panel/opening itself. (See Pls.' Compl. ¶¶ 11-13, 16b-16e, 35-36.) Whether Defendant had a duty to warn here is determined by assessing the inherent risks attendant to an attic access panel/opening located in the ceiling of a home – i.e., falling from a height which could cause injury — in order to determine if those risks are generally well-known. Here, the Court has already found that these risks are of an open and obvious nature generally known to ordinary persons of ordinary knowledge. Thus, Plaintiffs' argument that Defendant owed a duty to warn Plaintiffs about *how* to safely access the attic and the proper use of A Frame step ladders because the risks of using an A Frame

19

step ladder are not obvious presupposes that the risk of falling while utilizing the access panel itself is not open and obvious. Plaintiffs's logic fails in this regard, and Defendant is entitled to summary judgment on the PLA claim for failure to warn because Plaintiffs have not demonstrated a genuine issue of trial with respect to this claim.

Additionally, Plaintiff Diane Calendar's claim for loss of consortium in this case is derivative of Plaintiff James Calendar's personal injury claims and therefore its viability is dependant upon the survival of her husband's claims. Ryan v. Renny, 999 A.2d 427, 442 n.1 (N.J. 2010). In light of the fact that Defendant is entitled to the entry of summary judgment on Plaintiffs' remaining claims for negligence, breach of implied warranty, and failure to warn under the PLA, Plaintiff Diane Calendar's loss of consortium claim is no longer viable, and Defendant is entitled to summary judgment on that claim as well.

**V.    CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment [Doc. No. 48] is granted and judgment shall be entered in favor of Defendant on all of Plaintiffs's remaining claims. An Order consistent with this Opinion will be entered.

Dated: September 26, 2012            /s/ Noel L. Hillman
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.